### Peerless Casualty Co. v. Thomas D. Cole

[155 A2d 866]

May Term, 1959

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed September 1, 1959.

Motion for Reargument Denied November 3, 1959.

*Webber & Costello* for the plaintiff.

*William S. Pingree* for the defendant.

**Holden, J.** The Peerless Casualty Company issued an automobile liability insurance policy to the defendant for a period of one year from January 13, 1954. The policy was written under an Assigned Risk Plan, put in effect by liability insurance carriers, doing business in Vermont, to afford insurance protection to individuals who might otherwise be unable to obtain such insurance protection. By this action in contract, the plaintiff seeks to recover payments made in settlement of claims arising from an automobile accident in which the defendant insured was involved on April 24, 1954. The cause was tried by court, findings of fact were filed and judgment for the defendant was entered on the findings. The plaintiff appeals.

In 1954 the defendant was required to furnish a certificate of financial responsibility to the Commissioner of Motor Vehicles as a prerequisite to the issuance of operator's license under the provisions of Chapter 431 of Vermont Statutes, Revision of 1947, then in effect. He made application for the required insurance through Donald Davidson, an insurance agent and broker, licensed in the State of Vermont. Davidson was not an authorized agency representative of the plaintiff.

Through the efforts of Davidson and the operation of the Assigned Risk Plan, a liability policy was issued to the defendant on a vehicle described as a "1941 Plymouth Pickup." The financial responsibility of the defendant to the extent of

$20,000 for each accident was then certified to the Commissioner of Motor Vehicles by the plaintiff.

On February 27, 1954, the defendant "junked" the pick-up truck described in the policy. He purchased a 1946 Plymouth sedan in replacement of the abandoned truck. The court found that the defendant notified Davidson of the change in vehicles. Davidson testified that he gave notice of this change to the plaintiff. However, the court was unable to find that the plaintiff actually received this notification.

Thereafter, on April 24, 1954, the defendant became involved in a motor vehicle accident with a vehicle operated by one Holt. The defendant notified the plaintiff of this accident through Davidson. The accident was investigated by a claims adjuster of the plaintiff. The adjuster prepared a report of the accident and procured the defendant's signature to the report.

The plaintiff settled three claims arising from this accident. The sum of $810 was paid to Burnside Holt; $210 was paid to Dwight Holt and $75.00 was paid to Gordon Worth. The Worth claim was paid in three installments. The drafts for all claims, except the final installment of the Worth claim, were paid prior to July 2, 1954.

The court found the plaintiff notified the defendant by letter of July 2, 1954, that it disclaimed liability under the policy. The letter pointed out to the defendant that at the time of the accident, he owned and was operating a 1946 Plymouth sedan and not the automobile covered by the policy and that the policy had not been transferred to cover the different vehicle. The letter advised the plaintiff that in the event they were called upon to make any payments by reason of the certificate of Financial Responsibility, they would look to the defendant Cole for reimbursement.

The court further found that the letter, plaintiff's exhibit 2, was written to the defendant after the settlement payments had been made. It also determined that these payments were voluntarily made by the plaintiff and that there had been no adjudication or judgment of the defendant's liability on the claims that were settled. The finding goes on to state that the payments "were made without the knowledge and consent

of the defendant Cole but with the knowledge of the plaintiff Company that they would be looking to the defendant Cole for reimbursement for anything they had paid."

In reporting its findings, the trial court did not incorporate the context of the applicable provisions of the insurance policy issued to the defendant. The court referred to some of the provisions and sought to incorporate the transcript and exhibits by reference. The policy, with, its attached endorsements, was received in evidence as plaintiff's exhibit 1. The plaintiff excepted to the failure of the court to find the specific provisions of insurance policy upon which the plaintiff relied as the basis for its right to recovery. This exception was well taken.

■ Ordinarily exhibits cannot be incorporated into findings by reference. The trial court should have stated within its findings the context of the provisions of the insurance contract which were applicable to the issues litigated. *Enosburg Falls* v. *Hartford Steam Boiler Inspection and Insurance Co.*, 117 Vt 114, 117, 85 A2d 577; *Mancini* v. *Thomas*, 113 Vt 322, 328, 34 A2d 105. This error on the part of the trier does not, of itself, require a reversal. In order to reach the merits of the plaintiff's appeal, we will consider the applicable provisions of the policy of insurance as shown by plaintiff's exhibit 1, as though the language of the instrument had been properly included in the findings of fact. See *Enosburg Falls* v. *Hartford Steam Boiler Inspection and Insurance Co., supra*, 117 Vt at 117, 85 A2d at 579; *Bardwell* v. *Commercial Union Assurance Co.*, 105 Vt 106, 111, 163 A 633.

The liability policy furnished by the plaintiff, as shown by plaintiff's exhibit 1, provides under its Insuring Agreements:

"I   Coverage A—Bodily Injury Liability:   To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * .

Coverage B—Property Damage Liability:   To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property * * * .

"II Defense, Settlement, Supplementary Payments: As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall:
(a) defend any suit against the insured alleging such injury, * * * seeking damages on account thereof even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim as it deems expedient;

"IV Automobile Defined * * *
(a) Automobile. Except where stated to the contrary, the word 'automobile' means:
(4) Newly Acquired Automobile—An automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the Company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the insured at such delivery date; * * * ."

Under the Conditions of the policy it is provided:
"8. Financial Responsibility Laws—Coverages A and B: Such insurance as is afforded by this policy for bodily injury or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in the excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."

■ The plaintiff excepted to the failure of the court to find that under the terms of the policy the defendant would have been under no obligation to have paid the amounts that

it expended except for the financial responsibility endorsement. The plaintiff contends the failure of the defendant to properly notify it of the replacement vehicle within thirty days removed the coverage of the policy except for the financial responsibility agreement. It maintains that by the agreement the insured was bound to reimburse the insurer for such payments since they were made in response to the financial responsibility provision. The record fails to show that the plaintiff made any request of the trial court to make such a finding. The absence of a proper request is sufficient reason to overrule the exception. *Loeb* v. *Loeb*, 118 Vt 472, 493, 114 A2d 518; *Gray* v. *Brattleboro Trust Co.*, 97 Vt 270, 274, 122 A 670.

More important, however, such a finding could not consistently stand with the legal conclusion stated in the ultimate finding expressed by the trial court. The court concluded its numbered findings with the statement "By settlement of the claims, as stated aforesaid, voluntarily and without the consent of and prior notice to the defendant Cole and with full knowledge of the facts, the plaintiff Peerless Casualty Company is further estopped from asserting any claim against the defendant Cole." The plaintiff excepted on the grounds that this finding is contrary to and unsupported by the evidence and exhibits in the case and on the further ground that the finding states an erroneous conclusion of law.

■ On appeal the plaintiff seeks to raise the further point that estoppel was not pleaded by the defendant, and, for want of pleading, this defense is not available to him. This contention was not presented to the court below. Except for questions of jurisdiction, a reversal cannot turn on a point not raised in the original proceedings. *Campbell* v. *Howard National Bank*, 118 Vt 182, 188, 103 A2d 96; *Valenti* v. *Imperial Assurance Co.*, 107 Vt 65, 71, 176 A 413.

As to the statement of facts included in the finding, there is no indication in the record that the payments made in settlement were anything but voluntary. It does not appear that the plaintiff was under any compulsion, legal or otherwise, to effect the settlements made. The findings establish there was no adjudication or judgment on the issue of the defendant's liability on the claims that were settled.

The record affords no indication that the plaintiff sought a no-nwaiver or reservation of rights agreement before negotiating the settlements. And it does not appear that any effort was made by the plaintiff to obtain a judicial determination of its obligation as in *Farm Bureau Mutual Auto Insurance Co.* v. *Houle*, 118 Vt 154, 102 A2d 326.

It cannot be questioned that the plaintiff had full knowledge of all the facts. It appears that the insurer was notified of the accident in which the replacement vehicle was involved, and proceeded forthwith to make a sufficient investigation to conclude the settlements. Without more, the trial court was justified in reaching the inference that the plaintiff had full knowledge. It is undisputed that the defendant had no notice of the plaintiff's doings. The question then narrows to the correctness of the conclusion of law expressed in this finding.

When the plaintiff insurer furnished the certificate of the defendant's financial responsibility its undertaking became two-fold. As to third persons who might be injured as a result of the defendant's operation of a motor vehicle, its obligation was primarily statutory. As to the insured, its obligation is strictly contractual and is defined and controlled by the agreement between the insurer and its insured.

■ 23 V. S. A. §805 (formerly V. S. 47, §10,167) requires that the certificate of financial responsibility shall waive certain defenses to its contractual undertaking as far as injured persons are concerned. The section further provides: "Such contract, bond, or policy of insurance shall be for the benefit of a person injured in person or property, to the amounts indicated therein, to satisfy the legal liability of the insured." When the legal liability of the insured is established, the insurer's obligation to pay injured persons becomes absolute.

The plaintiff's obligation under the insurance agreement is substantially the same. Under Coverages A and B, the insurer is under a contractual obligation to pay on behalf of the insured "sums which the insured shall become legally obligated to pay as damages."

■ Neither the statute nor the insurance contract imposed any legal obligation on the plaintiff to make any pay-

ments to anyone by way of compromise or settlement. The obligation of payment arises only after the insured's legal liability for the damage has been legally determined. There is no binding legal obligation to settle a claim against the insured. There is the duty, growing out of the fiduciary relation between the parties, of mutual good faith and fidelity in the control of litigation and settlement. Legal liability as to settlement attaches only from bad faith and a violation of trust. See *Johnson* v. *Hardware Mutual Casualty Co.*, 109 Vt 481, 491, 1 A2d 817.

Apparently in preference to having the defendant's legal liability fixed by the process of the law, the plaintiff elected to compromise the issue. It deemed it "expedient" to discharge its statutory risk by settlement ahead of a trial on the merits. This was its privilege, for the policy so stipulated. But the authority to accomplish settlement is found only in the contract. It does not reside elsewhere.

■ The settlement of the Holt and Worth claims by the plaintiff, without consultation or notice to the defendant, constituted an unequivocal election by the insurer to stand on its insurance agreement. The insurer cannot cling to the insurance contract to accomplish a discharge of its statutory risk and disavow the agreement to compel a restitution of the payments expended, on the false premise that the coverage of the policy has been forfeited. The election, once made, preserves the insurance contract as though no forfeiture had occurred. *Mears* v. *Farmers Co-op. Fire Insurance Co.*, 112 Vt 519, 522, 28 A2d 699; *Pellon* v. *Conn. General Life Insurance Co.*, 105 Vt 508, 522, 168 A 701; *Francis* v. *London Guarantee & Accident Co.*, 100 Vt 425, 430, 138 A 780; *Webster* v. *State Mutual Fire Insurance Co.*, 81 Vt 75, 80, 69 A 319. Whether the doctrine of waiver or estoppel is applied is of little consequence. The result is the same. *Farm Bureau Mutual Auto Insurance Co.* v. *Houle, supra*, 118 Vt at 160, 102 A2d at 329; *Pellon* v. *Connecticut General Life Insurance Co., supra*, 105 Vt at 522, 168 A at 707.

In the case before us estoppel is involved, since, upon the plaintiff's theory of the case, the rights of the insured would be

prejudiced. The detriment of the insured is an element of estoppel. *Webster* v. *State Mutual Fire Insurance Co., supra*, 81 Vt at 80, 69 A at 320. By the voluntary settlement of the claims involved, the plaintiff foreclosed the defendant of any opportunity to disclaim his personal liability for negligence. For all that appears in the proof, the defendant was not legally liable for the claims that were settled. And at the time the plaintiff asserted its right to reimbursement, his defense to any claim of negligence had been irretrievably bargained away at the instance of the plaintiff. *Employer's Mutual Casualty Co.* v. *Nicholas*, 124 Colo 544, 238 P2d 1120, 1122.

Upon these considerations, a recovery by the plaintiff was properly denied. This result renders it unnecessary to consider the plaintiff's exception to the court's finding that the broker Davidson was acting as agent for the plaintiff in receiving notice of the change of the vehicle described in the policy.

*Judgment affirmed.*