## Donald Hamlin v. The Mutual Life Insurance Co.

[487 A.2d 159]

No. 83-273

Present: Hill, Underwood, Peck and Gibson, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed December 14, 1984

*Kolvoord, Overton & Wilson,* Essex Junction, for Plaintiff-Appellee.

*Lawrin P. Crispe* and *Theodore C. Kramer* of *Crispe & Crispe,* Brattleboro, for Defendant-Appellant.

**Underwood, J.** Plaintiff, Donald Hamlin, as a claimed beneficiary under a policy of insurance allegedly issued by the defendant, The Mutual Life Insurance Company of New York

(Mutual), on the life of his son, Geoffrey Hamlin, brought suit on the policy to recover benefits as a result of his son's accidental death.

Defendant, by way of an answer to plaintiff's complaint, admitted that Geoffrey Hamlin applied for a policy but argued that, because plaintiff and Geoffrey Hamlin had each cancelled the application for the policy of insurance, no policy was issued. It filed eight affirmative defenses, including, inter alia, statute of limitations, failure to state a claim upon which relief can be granted, estoppel, waiver, cancellation and nonissuance of the alleged policy.

Thereafter, defendant filed a motion for summary judgment on the grounds that Geoffrey Hamlin had revoked his application for life insurance before the application had been accepted by the defendant.

Plaintiff opposed the defendant's motion for summary judgment on the grounds that there was no direct evidence that Geoffrey Hamlin had revoked his application for a life insurance policy with the defendant. Plaintiff filed a cross-motion for summary judgment, contending that the defendant had waived all defenses to formation of the insurance contract, except its claim that Geoffrey Hamlin failed to pay the first full premium. Since the first full premium was not due until twenty-two days after the date of defendant's formal notice of cancellation, plaintiff insisted that he was entitled to judgment as a matter of law.

The trial court found that the defendant had, by law, waived all defenses to the formation of the insurance contract except for nonpayment of the first full premium; that this defense had not been included among defendant's affirmative defenses; and lastly, that there was no dispute concerning the fact that the payment of the first full premium was not due until after the date of the defendant's attempted cancellation of the insurance policy. After a hearing on these two motions, the trial court filed findings of fact and conclusions of law and denied the defendant's motion for summary judgment, granted the plaintiff's motion for summary judgment, and ordered a hearing on the issue of damages. There being no dispute as to the amount of damages, the trial court then entered a final judgment for the plaintiff in the amount of $55,056.55. Defendant

filed a timely notice of appeal to this Court from that portion of the judgment order dealing with the issue of liability only.

The record, from the pleadings, affidavits and depositions, discloses that on May 30, 1974, Geoffrey Hamlin applied to defendant for a $15,000 whole life insurance policy, which named his father as the sole beneficiary. This application was accompanied by a $25.00 payment, in return for which the defendant issued a document entitled "Partial Payment Conditional Receipt." Under the terms of this instrument, Geoffrey Hamlin was to be covered for a period of 60 days, provided that the company approved his application and that the balance of the first premium was paid within 60 days of May 30, 1974. On June 11, 1974, Geoffrey Hamlin applied to another insurance company, the Metropolitan Life Insurance Company (Metropolitan), for a life insurance policy. In a letter from the plaintiff, dated June 13, 1974, addressed to Mutual's field underwriter, the plaintiff indicated that his son, Geoffrey Hamlin, had made an error in applying to Mutual for life insurance, and that his son had intended to apply to Metropolitan. There is nothing else in the record which directly indicates the intent of Geoffrey Hamlin concerning the disposition of his application for a life insurance policy with Mutual. On July 8, 1974, Geoffrey Hamlin was killed in a traffic accident. On July 9, 1974, the plaintiff received a letter from Mutual, dated July 8, 1974, addressed to his son. That letter stated that his son's life insurance policy with Mutual had been issued, but because he had elected not to pay the first full premium and establish the policy, the life insurance policy had never been in force. Enclosed with that letter was a refund of the $25.00 initial payment.

■ The basic guideline to be followed by a trial court in deciding upon the disposition of a motion for summary judgment is set forth in V.R.C.P. 56(c):

Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

The standard for our review of a trial court's granting of a motion for summary judgment is the same as the standard to

be applied by the trial court: "A summary judgment is appropriate only when the material before the court clearly shows there is no genuine issue as to any material fact." *Braun* v. *Humiston,* 140 Vt. 302, 306, 437 A.2d 1388, 1389 (1981) (citations omitted). In order to determine whether there was any genuine issue as to any material fact, we must first determine the legal basis for the trial court's judgment. It is only when we establish this basis that we can then determine which facts are material, and, subsequently, whether there was a genuine issue as to those facts found to be material.

The trial court determined, as a matter of law, that the defendant's letter of July 8, 1974, which was addressed to Geoffrey Hamlin, limited the scope of the defendant's available defenses to the single defense it raised in that letter: namely, that it had cancelled Geoffrey Hamlin's life insurance policy due to his nonpayment of the initial premium. While there was perhaps no genuine issue as to any material fact relating to that single defense, we find that the trial court misapplied the insurance defense waiver rule and thus never considered whether there were genuine issues as to any material facts relating to the other affirmative defenses properly raised by the defendant.

The trial court relied on the insurance defense waiver rule as established by this Court in *Cummings* v. *Connecticut General Life Insurance Co.,* 102 Vt. 351, 148 A. 484 (1930), hereinafter referred to as *Cummings II,*[1] and as applied in *Segalla* v. *United States Fire Insurance Co.,* 135 Vt. 185, 373

---

[1] We must here note some of the history surrounding the *Cummings* litigation. An initial trial by jury was held at the June Term, 1927, in Caledonia County. In that trial, in which the defendant had *not* raised the defense of nonpayment of the initial premium, a verdict and judgment was entered for the plaintiff. The defendant appealed, and the Court reversed the result and remanded the cause. *Cummings* v. *Connecticut General Life Insurance Co.,* 101 Vt. 73, 142 A. 82 (1928) (hereafter referred to as *Cummings I*). A second jury trial was held at the June Term, 1928, in Caledonia County. At the second trial, defendant had amended its answer to include the defense of nonpayment of the initial premium. Once again the verdict and judgment was for the plaintiff, but judgment was only in the amount of $24.02, the amount of the quarterly premium received by the defendant, together with interest and costs. This time it was the plaintiff that appealed, resulting in the decision in *Cummings II.*

A.2d 535 (1977), and *Armstrong* v. *Hanover Insurance Co.*, 130 Vt. 182, 289 A.2d 669 (1972).

*Cummings II* involved a claim upon an insurance policy on the life of plaintiff's deceased wife. In that action, the defendant raised two defenses to the plaintiff's complaint: first, that the decedent had made false representations in regard to her state of health, and second, that neither the decedent nor her husband had paid the defendant, during the decedent's lifetime, the first quarterly premium on the decedent's life insurance policy. The first defense was raised in letters from the defendant to the plaintiff, and later, to the plaintiff's counsel and was relied upon as the sole defense in *Cummings I;* these letters were silent on the second defense later raised by the defendant's amended answer in *Cummings II.*

The opinion in *Cummings II, supra,* 102 Vt. at 359, 148 A. at 486, implies that the defendant's second defense (that involving the alleged nonpayment of premium) was raised for the first time in its amended pleadings, prior to the second trial. There is no indication that the nonpayment defense was raised at any time prior to or during the first jury trial, held in June, 1927. The Court, in *Cummings II,* held that the defendant had waived its second defense, the nonpayment of the initial premium, by its failure to include that defense along with the two other defenses raised in its letters to the plaintiff and plaintiff's counsel. *Id.* at 362, 148 A. at 487. The Court based its decision to disallow consideration of the defendant's second defense using language referring to refusal to pay a loss:

> [W]hen one defense is specified by an insurer as its reason for *refusing to pay a loss,* all others are waived.
>
> . . . .
>
> [The insurer] may *refuse to pay* and say nothing as to the basis of *his refusal.* In that case, all defenses to an action on the policy are available to him. He may *refuse to pay* on a particular ground reserving the right to defend on other grounds, with the same result. But, when he deliberately puts his *refusal to pay* on a specified ground, and says no more, he should not be allowed to "mend his hold" by asserting other defenses after the insured has

taken him at his word and is attempting to enforce his liability.

*Id.* at 360–62, 148 A. at 486–87 (emphasis added). In order for an insurer to refuse to pay a claim and to specify reasons for such a refusal (i.e., raise defenses), a claim of payment raised by the plaintiff must have necessarily preceded the refusal.

In the present case, the action of the defendant (defendant's letter of July 8, 1974), which action the plaintiff contends waives any additional defenses subsequently raised, was taken prior to the plaintiff's claim for the proceeds under his son's life insurance policy. Indeed, the defendant's action in writing the letter dated July 8, 1974, apparently occurred prior to any knowledge on its part of the death, on that date, of Geoffrey Hamlin. It certainly did not know then that nearly six years later plaintiff would bring this suit. Consequently, the defendant's letter of July 8, 1974, could not have been a refusal to pay a claim. The sanction imposed upon the defendant in *Cummings II* cannot logically or fairly be imposed on the defendant in this case.

The cases subsequent to *Cummings II,* cited by the trial court and by the plaintiff, also do not support the application of the insurance defense waiver rule in the present case. In *Armstrong, supra,* 130 Vt. at 183–84, 289 A.2d at 670, the action of the insurer which was held to waive all subsequently raised defenses occurred 44 days after the filing of the original complaint in that case. The second defense which the insurer attempted to raise was first set forth more than two years after the initiation of the litigation. *Id.* at 184, 289 A.2d at 670. In *Segalla, supra,* 135 Vt. at 189–90, 373 A.2d at 538, the waiver rule was not applied to the insurer as the insurer was found, at the time of its response to the plaintiff's initial claims, not to have had notice of the plaintiff's subsequently raised claim. Finally, we note the case of *Middlebrook* v. *Banker's Life & Casualty Co.,* 126 Vt. 432, 234 A.2d 346 (1967), cited by the Court in *Segalla, supra,* 135 Vt. at 189, 373 A.2d at 538, and in *Armstrong, supra,* 130 Vt. at 188, 289 A.2d at 673. In *Middlebrook, supra,* 126 Vt. at 435–36, 234 A.2d at 348–49, the insurer raised a new defense following the jury trial on one issue, and after the close of evidence in a court

hearing on the other issues. The plaintiff in *Middlebrook* maintained that the insurer's new defense was not set out in its affirmative defenses contained in its answer to plaintiff's complaint; the Court agreed and applied the waiver rule as established by *Cummings II*. Once again, a case applying the insurance defense waiver rule is distinguishable on its facts from the present case.[2]

■■ The trial court erred in applying the insurance defense waiver rule to the present case. We hold that the waiver rule established in *Cummings II* can be applied only when defenses are raised subsequent to a claim by the insured's beneficiary. The defenses raised by defendant in the present case, in its answer to plaintiff's complaint, are not barred by the waiver rule. The record before us clearly indicates that there is a dispute as to facts material to the merits of one or more of those defenses; therefore, the trial court's entry of summary judgment was in error.

*Reversed and cause remanded for trial on the merits.*

Larrow, J. (Ret.), Specially Assigned, concurring in part: I agree with the Court's entry of reversal, but I can see no need of further trial. The record seems to me completely clear that the application for coverage was withdrawn voluntarily, by mutual consent, for adequate reasons, and under circumstances of complete fairness. I would render judgment for the defendant. Indeed, nothing in the majority opinion seems to indicate why not.

---

[2] We are obliged to note that in *Armstrong, supra,* 130 Vt. at 188, 289 A.2d at 673, the Court stated "[i]t is significant that in both the *Cummings* and *Middlebrook* cases that the factual situations [sic] that brought the *Cummings* rule of law into operation was the assertion of reasons for denial of coverage other than those first asserted prior to litigation." There is, however, no indication in either of these cases that the initial assertion of reasons for denial of coverage occurred prior to the plaintiff's having made a claim under the policy.